UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAGANATHAN CHANDRASEKARAN and
PREETHI DEVELOPERS, LLC,

    Plaintiffs,

v.                                                                      Case No. 20-13247

CHAD F. WOLF, KENNETH CUCCINELLI,
DONALD NEUFELD, and
KATHY BARAN,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION
FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs Jaganathan Chandrasekaran and Preethi Developers LLC bring this action asserting claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). (ECF No. 1, PageID.23-26.) They challenge the U.S. Citizenship and Immigration Services' ("USCIS") denial of a nonimmigrant L-1A visa for Plaintiff Jaganathan Chandrasekaran. (*Id.*, PageID.2.) The case was originally filed on September 18, 2020, in the United States District Court for the District of Colombia. On December 10, 2020, the case was transferred to this court.

On February 1, 2021, Plaintiffs filed a motion for temporary restraining order ("TRO"). (ECF No. 8.) Plaintiffs asked that the court order the government to extend Plaintiff Jaganathan Chandrasekaran's B-2 visitor visa for the pendency of this litigation. (*Id.*, PageID.53.) On an expedited briefing schedule, Defendants filed a response and Plaintiffs replied. (ECF Nos. 13, 18.) The court has reviewed the record and does not

find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, Plaintiffs' motion will be denied.

## I. BACKGROUND

On November 25, 2019, Plaintiff Chandrasekaran entered the United States under a B-2 visa. (ECF No. 13, PageID.84.) The B-2 visa is used for pleasure, tourism, and medical treatment. US. Department of State Bureau of Consular Affairs, *U.S. Visas* (2021). The visa-holder must "hav[e] a residence in a foreign country which he has no intention of abandoning." 8 U.S.C. § 1101(15)(B); *Matovski v. Gonzales*, 492 F.3d 722, 728 (6th Cir. 2007) ("By its nature, the B–2 visitor admission is inconsistent with efforts to immigrate."). Plaintiff Chandrasekaran's original B-2 visa expired in late May 2020. (ECF No. 13, PageID.84.)

In early May 2020, Plaintiff Preethi Developers LLC filed a Form I-129 with Defendants. (ECF No. 8-1, PageID.33; ECF No. 13, PageID.83-84; ECF No. 1-7.) The company applied on behalf of Plaintiff Chandrasekaran to obtain an L-1A visa. (ECF No. 8-1, PageID.33; ECF No. 13, PageID.83-84; ECF No. 1-7.) To qualify for an L-1A visa, an alien must, "within [three] years preceding the time of [the] application[s] for admission into the United States, ha[ve] been employed continuously for one year by a firm." 8 U.S.C. § 1101(15)(L). The firm or its "subsidiary or affiliate" must intend to use the alien's services "temporarily . . . in a capacity that is managerial [or] executive." *Id.* As explained by USCIS, "[t]he L-1A nonimmigrant classification enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States. This classification also enables a foreign company that does not yet have an affiliated U.S. office to send an executive or

2

manager to the United States with the purpose of establishing one." *L-1A Intracompany Transferee Executive or Manager*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/working-in-the-united-states/temporary-workers/l-1a-intracompany-transferee-executive-or-manager (last visited March 15, 2021); *see also* 8 C.F.R. § 214.2(l) (regulations for the issuance of L-1A and L-1B visas).

The Form I-129 tolled Plaintiff Chandrasekaran's unlawful status for the pendency of Defendants' consideration of the application. (ECF No. 13, PageID.84.) On August 21, 2020, the government denied the petition for L-1A status. (ECF No. 8-1, PageID.33; ECF No. 13, PageID.83-84; ECF No. 1-8.) Plaintiff Chandrasekaran's B-2 visa had already expired, and he had not requested an extension of it. (ECF No. 13, PageID.84-85.) Thus, he immediately began to accrue unlawful presence. (*Id.*) If Plaintiff Chandrasekaran accrues over 180 days of unlawful presence, but less than a year, he cannot return to the United States for three years after he leaves. *See* 8 U.S.C. § 1182(a)(9)(B)(i). (ECF No. 8-1, PageID.35-36; ECF No. 13, PageID.86.) If Plaintiff Chandrasekaran remains in the country illegally for over a year, he may be barred from returning to the United States for up to ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i). (ECF No. 8-1, PageID.35-36; ECF No. 13, PageID.86.)

On August 29, 2020, Plaintiff Chandrasekaran applied to extend his expired B-2 visa until December 5, 2020. (ECF No. 13, PageID.84-85.) B-2 visa extensions generally last six months, at most. *See* 8 C.F.R. § 214.2(b)(1) ("Any B–1 visitor for business or B–2 visitor for pleasure may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months each."). After conducting a review of the application, Defendant, on February 2, 2021,

approved it and retroactively provided Plaintiff Chandrasekaran a six-month visa extension, which terminated on November 24, 2020. (ECF No. 13, PageID.85.) On February 3, 20201, Plaintiff Chandrasekaran applied for another B-2 extension, and the request is currently pending. (*Id.*, PageID.85-86.) While this request for a second extension is pending, Plaintiff Chandrasekaran has chosen to remain in the United States and accrue unlawful presence. (*Id.*, PageID.85.)

Plaintiffs filed this lawsuit on September 28, 2020 in the United States District Court for the District of Columbia. Complaint, *Chandrasekaran v. Wolf*, Case No. 20-02655 (D.D.C. Sep. 18, 2020). On November 12, 2020, Defendants moved to transfer the case to this district. Motion to Transfer Case, *Chandrasekaran*, Case No. 20-02655 (D.D.C. Nov. 12, 2020). The motion was granted on November 30, 2020. Minute Order, *Chandrasekaran*, Case No. 20-02655 (D.D.C. Nov. 30, 2020). The case was opened in this district on December 10, 2020, (ECF No. 1), and on February 1, 2021, Plaintiffs moved for a temporary restraining order. (ECF No. 8.)

## II.  STANDARD

TROs are extraordinary remedies that are granted only in rare circumstances. *See Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974) (noting that TROs often "run[] counter to the notion of court action taken before" both sides of a dispute have a full and complete "opportunity to be heard" and before the case is fully developed); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (stating that preliminary injunctions are "extraordinary remed[ies] which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it"). To obtain a TRO, the moving party

4

must "clearly show that immediate and irreparable injury, loss, or damage will result." Fed. R. Civ. P. 65(b)(1)(A). The court considers four factors when reviewing a motion for a TRO: "(1) whether [the plaintiff] has a strong likelihood of success on the merits, (2) whether [the plaintiff] would suffer irreparable injury absent a stay, (3) whether granting the [relief] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [relief]."[1] *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. for Homeless and Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). The third and fourth factor "merge[] . . . when the government is the defendant." *Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"The purpose of a preliminary injunction is simply to preserve the status quo; thus," when a court grants a request for an injunction, "findings of fact and conclusions of law made by [the] court . . . are not binding at a trial on the merits." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). Similarly, the proof needed to obtain an injunction "is much more stringent than the proof required to survive a summary judgment motion," and when a court denies a request for an injunction, it "express[es] no opinion as to the ultimate merits of the plaintiff['s] case." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

---

[1] These factors are also used when reviewing a motion for preliminary injunction. *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014).

### III. DISCUSSION

Applying and balancing the four factors to this case, *Brunner*, 543 F.3d at 361, the court finds that Plaintiffs have not met their burden of showing that emergency injunctive relief is warranted at this time.

### A. Strong Likelihood of Success on the Merits

Plaintiffs have not shown a strong likelihood that they will be successful in their claims under the APA. *Brunner*, 543 F.3d at 361.

The standards that courts apply to review agency decisions are deferential to government action. Plaintiffs focus their motion for a TRO on their claim that Defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of 5 U.S.C. § 706(2)(A). (*See* ECF No. 8-1, PageID.49, 52 (citing cases reviewing § 706(2)(A) challenges).) As the Supreme Court explained in *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." 463 U.S. 29, 43 (1983) (quotations removed).

In their complaint, Plaintiffs assert that Defendants' actions were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The standard for this claim also requires deference to the government's deliberative choices. When interpreting statutes and regulations that form the basis of a government agency's "statutory jurisdiction [and] authority," *id.*, courts often defer to the

agency's legal interpretations. *See, e.g., Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1037 (6th Cir. 2018) (reviewing a § 706(2)(C) challenge by applying the deferential standard for statutory interpretation described in *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) ("[W]e presume that Congress intended for courts to defer to agencies when they interpret their own ambiguous rules."). Plaintiffs, in their complaint, claim Defendants' decision to deny Plaintiff Chandrasekaran an L-1A visa was "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). But "[t]he substantial evidence standard is a lower standard than weight of the evidence and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Sasse v. U.S. Dept. of Labor*, 409 F.3d 773, 778 (6th Cir. 2005) (quotations removed). Finally, the complaint states that Defendants' actions were "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D). "[W]hether a certain procedure is required in a particular circumstance, or whether a certain methodology satisfies the procedure, is often left to the agency's discretion." *Meister v. U.S. Dept. of Agric.*, 623 F.3d 363, 370 (6th Cir. 2010).

     Plaintiffs' discussion of their claims is, in total, only seven pages long, and more cursory than the court would expect for a dispositive motion at a later stage in an APA case. (ECF No. 8-1, PageID.45-52; ECF No. 18, PageID.1049-50.) It is inherent to any emergency motion filed near the initiation of a lawsuit that the parties lack the time and ability to provide a complete discussion of the relevant claims. The undeveloped nature of the record and arguments lends strong support to the principle that injunctive relief at

7

the commencement of cases should be used with utmost caution, lest the court interfere prematurely with the parties' operations. *See Granny Goose Foods*, 415 U.S. at 439 (noting that TROs are issued before parties are given a full "opportunity to be heard"); *S. Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (reasoning that preliminary injunctions, by their nature, issue "before the parties have had an opportunity to fully develop the record"); *Overstreet*, 305 F.3d at 573 ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.").

With these limitations, Plaintiffs' motion does not convincingly demonstrate that Plaintiffs will succeed on their APA claims. Out of several reasons why Defendants state they denied Plaintiff Chandrasekaran an L-1A visa, one was that Plaintiffs failed to provide adequate evidence that Plaintiff Chandrasekaran had been "employed abroad by a qualifying organization for one continuous year of full-time employment within the [preceding] three years." (ECF No. 1-8, PageID.58.) In the denial decision, Defendants noted that Plaintiffs had submitted bank statements to show that Plaintiff Chandrasekaran was employed by Plaintiff Preethi Developers LLC for the entire year of 2019. (*Id.*, PageID.57.) However, federal government records showed that Plaintiff Chandrasekaran was present in the United States for 125 days under B-2 visa classifications for 2019. (*Id.*, PageID.57-58.) According to Defendants, those days could not be counted in favor of Plaintiff Chandrasekaran in determining whether he worked for "one continuous year" for Plaintiff Preethi Developers LLC in the three years preceding the L-1A visa application. (*Id.*, PageID.58.) Defendants also stated that

8

Plaintiff Chandrasekaran had previously informed the federal government in older immigration forms that he worked for Sri Sai Enterprises, not Plaintiff Preethi Developers LLC. (*Id.*, PageID.57.)

In the motion for TRO, Plaintiffs do not contest the factual findings made or the legal interpretations rendered by Defendants in coming to their decision. Instead, Plaintiffs contend that Defendants did not properly consider a letter Plaintiff Preethi Developers LLC sent "confirming [Plaintiff] Chandrasekaran's dates of employment." (ECF No. 8-1, PageID.47.) However, Defendants did not ignore the letter. They noted the letter in the final decision and reasoned that, by itself, it did not establish that Plaintiff Chandrasekaran had worked one continuous year for Plaintiff Preethi Developers LLC. (ECF No. 1-8, PageID.58.) Plaintiff Preethi Developers LLC also submitted partnership deeds from 2014 and registration papers from India from 2017, both of which listed Plaintiff Chandrasekaran as a "partner" of Plaintiff Preethi Developers LLC and Sri Sai Enterprises.[2] (ECF No. 16-2, PageID.844-57.) Plaintiffs used these records to show that the two companies were related, in response to Defendants' concerns that Plaintiff Chandrasekaran had previously stated he worked for Sri Sai Enterprises. (*Id.*, PageID.815 (Plaintiff Preethi Developers LLC's letter stating that "Sri Sai Enterprises and Preethi Properties and Developers in India are owned and

---

[2]  The court notes that simply because Plaintiff Chandrasekaran was considered a "partner" of Plaintiff Preethi Developers LLC in 2017 does not imply that he was employed by or managed Plaintiff Preethi Developers LLC. Partnership can connote only an ownership interest and not a managerial role. *See* 59A Am. Jur. 2d *Partnerships* § 44 ("Partnerships are often created in which a silent partner contributes money, credit, or property, and an active partner contributes his labor and openly manages the business."). Given that the documents were created under Indian law, there is even greater uncertainty as to what "partner" means.

9

run by the same family and partners").) Defendants still held that Plaintiffs had not submitted sufficient documentary evidence to support Plaintiff Preethi Developers LLC's claim that Plaintiff Chandrasekaran was its employee for one continuous year. (ECF No. 1-8, PageID.58.)

Plaintiffs contend that Defendants' decision was arbitrary and capricious, (ECF No. 8-1, PageID.49), but the record may ultimately show that Defendants' decision demonstrated at least a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. The bank statements used to show that Chandrasekaran worked for Preethi Developers LLC for all of 2019 apparently conflicted with federal immigration records. (ECF No. 1-8, PageID.57-58.) The non-descript deeds and registration papers from 2014 and 2017, which Plaintiffs have used in their effort to prove a connection between Plaintiff Preethi Developers LLC and Sri Sai Enterprises, were inadequate to convince Defendants of Plaintiff Chandrasekaran's recent employment. (*Id.*) Defendants' analysis appears rational upon the kind of review available at this early stage of the proceeding. Indeed, there appears to be a strong likelihood that Plaintiffs will fail to demonstrate that Defendants "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Sierra Club v. U.S. Forest Serv.*, 828 F.3d 402, 407 (6th Cir. 2016) (quotations removed).

Furthermore, questions remain about whether the court has jurisdiction over Plaintiffs' claims. Title 8 U.S.C. § 1252(a)(2)(B) states that "no court shall have

10

jurisdiction to review . . . [a] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." The application of this provision is often the subject of dispute. *See, e.g.*, *Johns v. Holder*, 678 F.3d 404 (6th Cir. 2012) (reviewing whether the weighing of evidence for a deportation waiver was left to discretion of the Attorney General and thus outside the court's jurisdiction). Section 1252(a)(2)(B) does not apply to "[n]on-discretionary decisions," *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 379 (6th Cir. 2017), nor does it extend to "purely legal questions and mixed questions of law and fact." *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021) (citing 8 U.S.C. § 1252(a)(2)(D)).

Although Plaintiffs assert § 1252(a)(2)(B)'s jurisdictional bar does not apply to applications for L-1A visas, (ECF No. 18, PageID.1046-47), a court in this district, in a well-reasoned opinion, came to the opposite conclusion. *Global Export/Import Link, Inc. v. U.S. Bureau of Citizenship and Immigr. Servs.*, 423 F. Supp. 2d 703 (E.D. Mich. 2006) (Gadola, J.). The court in *Global Export/Import Link* reasoned that L-1A visas are regulated by 8 U.S.C. § 1184(c)(1). Section 1184(c)(1) states:

> The question of importing any alien as a nonimmigrant under subparagraph (H), (L), (O), or (P)(i) of section 1101(a)(15) of this title (excluding nonimmigrants under section 1101(a)(15)(H)(i)(b1) of this title) in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer.

The *Global Export/Import Link* court held that the language "shall be determined by the Attorney General" left the decision to issue an L-1A visa in the discretion of the Attorney General, thus removing the court's jurisdiction under § 1252(a)(2)(B). *See Global Export/Import Link*, 423 F. Supp. 2d at 708-09. The analysis in *Global Export/Import*

11

*Link* seems persuasive but the parties have not had the opportunity to fully research and brief this issue, and the court makes no affirmative finding on its merits. (ECF No. 18, PageID.1046-47, Plaintiffs' Reply (dedicating two pages to the court's jurisdiction under § 1252(a)(2)(B)); ECF No. 13, PageID.95, Defendants' Response (The holding in *Global Export/Import Link* "may be the subject of the summary judgment briefings on the underlying claim.").) At this stage of the proceeding, the court cannot conclude that Plaintiffs have a "strong likelihood of success on the merits." *Brunner*, 543 F.3d at 361.

### B. Irreparable Injury

Plaintiffs argue that Chandrasekaran will suffer irreparable injury if he is not permitted to stay in the United States for the pendency of this litigation. (ECF No. 8-1, PageID.41.) In the motion, Plaintiffs state that Chandrasekaran is subject to fear and anxiety that he could be removed from the United States without the ability to return. (*Id.*) Yet Plaintiff Chandrasekaran is in the United States only on the authority of a B-2 tourist visa, which is not in any way related to an L-1A visa or Plaintiffs' denied application. B-2 visas are provided for only short periods of time, recognizing that the visa holder is merely a visitor to the United States and not an immigrant. Holders of B-2 visas by definition "hav[e] a residence in a foreign country which [they] ha[ve] no intention of abandoning." 8 U.S.C. § 1101(15)(B); *see also Matovski*, 492 F.3d at 728 ("By its nature, the B–2 visitor admission is inconsistent with efforts to immigrate."); US. Department of State Bureau of Consular Affairs, *supra* (explaining how B-2 visas are given only for pleasure, tourism, and medical treatment).

Plaintiffs present no legal authority that Chandrasekaran must be present in the United States to apply for a L-1A visa, nor do Plaintiffs claim that it is common to apply

for L-1A visa while residing in the United States. In fact, the Form I-129 Plaintiffs submitted to the government in May 2020 allowed Plaintiffs to apply for the visa to "be admitted" into the country. (ECF No. 1-7, PageID.43.) There is no indication in the record that Plaintiff Chandrasekaran is subject to threats, harassment, or serious harm in India. By all accounts, Plaintiff Chandrasekaran is a business owner with substantial funds on hand. (ECF No. 16-2, PageID.844-57; ECF No. 8-2, PageID.56 (Plaintiff Chandrasekaran stating in an affidavit that he recently invested $1,000,000 of his own funds to build a warehouse).) Returning to his homeland, which he attested that he had "no intention of abandoning" when he first arrived in the United States, does not constitute "irreparable harm" warranting extraordinary injunctive relief. 8 U.S.C. § 1101(15)(B).

Plaintiffs contend that Chandrasekaran may be barred from returning to the United States for three years if he accrues over 180 days of unlawful presence. *See* 8 U.S.C. § 1182(a)(9)(B)(i). (ECF No. 8-1, PageID.35-36; ECF No. 13, PageID.86.) However, Plaintiffs do not contend that Chandrasekaran is in any way forced to violate the law or incur serious penalties. The court does not find that Plaintiffs have established irreparable injury simply because Plaintiff Chandrasekaran is willing to make his legal situation worse than it already is. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2020) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."); *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010) (affirming district court finding that legal consequences of a defaulted loan were self-inflicted and thus not irreparable).

If he is not provided another B-2 visa extension, Plaintiff Chandrasekaran has the ability to leave the country and reapply for an L-1A visa. (*See* ECF No. 13, PageID.97-98.) In the alternative, Plaintiffs may be permitted to continue this action while Plaintiff Chandrasekaran resides outside the country. Plaintiffs' motion includes a conclusory statement that if Plaintiff Chandrasekaran leaves the country, Defendants will automatically deny Plaintiffs' application because Plaintiffs indicated, in the Form I-129, that Plaintiff Chandrasekaran seeks to change his nonimmigrant status rather than enter the country. (ECF No. 8-1, PageID.35; ECF No. 1-7, PageID.43.) Plaintiffs cite no policy, guidance document, regulation, statute, or caselaw that supports this assertion. They cite only Defendants' general legal authority to alter nonimmigrant classifications. *See* 8 U.S.C. § 1258; 8 C.F.R. § 248.1. (ECF No. 8-1, PageID.35.) Defendants, the agency officials who would actually be reviewing Plaintiffs' application, state that Plaintiffs can challenge their August 2020 decision to deny an L-1A visa from outside the United States. (ECF No. 13, PageID.84.) Plaintiffs' explanation for irreparable harm is not convincing.

In Plaintiffs' motion, they also assert that Chandrasekaran's wife suffers anxiety and depression and was not able to obtain medical treatment due to her lack of legal status. (ECF No. 8-1, PageID.41-42.) However, Plaintiffs also state that Chandrasekaran's wife left the United States on December 27, 2020, due to the emotional toll she experienced and the lack of medical care for her and her child. (*Id.*) Given that Plaintiff Chandrasekaran's wife is already outside the United States, the anxiety and lack of medical care she allegedly underwent while in the United States is not pertinent to the court's analysis. Plaintiffs do not explain how providing Plaintiff

14

Chandrasekaran legal status now would remedy past harms or ameliorate currently existing effects allegedly experienced by his wife.

Plaintiff Chandrasekaran and his wife had a child in the United States on September 30, 2020. (*Id.*) Plaintiffs claim this child is unable to receive basic vaccinations due to Plaintiff Chandrasekaran's immigration status. (*Id.*) The only support for this contention is an affidavit from Plaintiff Chandrasekaran himself; Plaintiffs cite no policy, experts, or law to confirm this assertion. Plaintiffs also do not clarify if the child is currently in the United States or if the child left the country with Plaintiff Chandrasekaran's wife. Even if the child is still in the United States, Plaintiffs provide no reason why Plaintiff Chandrasekaran cannot leave the country with the child and obtain basic vaccinations in India.

Finally, Plaintiffs claim that their business is suffering due to Plaintiff Chandrasekaran's inability to manage Plaintiff Preethi Developers LLC's U.S. branch. (*Id.*, PageID.42.) According to Plaintiffs, Plaintiff Chandrasekaran has been able to hire just one other employee while in the United States. (*Id.*) The only evidence Plaintiff cite to support these assertions is Plaintiff Chandrasekaran's affidavit; Plaintiffs do not attach financial documents, loans, payroll, or accounting information. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy."). Plaintiffs have the "burden of proving that . . . circumstances clearly demand" an injunction, and the information they provided the court is not adequate. *Overstreet*, 305 F.3d at 573.

Furthermore, Plaintiffs do not explain how Plaintiff Chandrasekaran could have performed *any* work for Plaintiff Preethi Developers LLC while in the United States, including hiring other employees and "engag[ing] approximately 40 contracts," (ECF No. 8-2, PageID.56), while on a B-2 tourist visa. *See Visitor Visa*, U.S. Department of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited March 17, 2021) ("An individual on a visitor visa (B1/B2) is not permitted to accept employment or work in the United States."); 8 C.F.R. § 214.1(e) ("A nonimmigrant in the United States in a class defined . . . as a temporary visitor for pleasure . . . may not engage in any employment."). Plaintiffs ask that the court issue an injunction that orders Defendants to "preserve Plaintiff Chandrasekaran's B1/B2 visa" and reinstate "his previous B1/B2 visa." (*Id.*, PageID.53.) But Plaintiffs fail to clarify how extending Plaintiff Chandrasekaran's non-work visa would in any way remedy lost profits while this litigation continues.[3] Thus, Plaintiffs have not adequately demonstrated irreparable injury. *Brunner*, 543 F.3d at 361.

---

[3]  The court also notes that Plaintiff Chandrasekaran began accruing unlawful status as soon as Defendants denied the L-1A visa request on August 21, 2020. (ECF No. 13, PageID.84-85.) Plaintiff Chandrasekaran submitted a request for a B-2 visa extension on August 29, 2020 but sought only to extend his visa until December 5, 2020. (*Id.*) Despite filing this action in September 28, 2020, Plaintiffs waited until after December 5 had long since passed before moving, in February 2021, for "emergency" injunctive relief. Plaintiffs had over four months to move for an injunction, but chose to wait until February 1, 2021, 17 days before Plaintiff Chandrasekaran would accrue the 180th day of unlawful status, to file the instant motion. (ECF No. 8-1, PageID.35.) The government granted Plaintiff Chandrasekaran's visa extension on February 2, 2021, thus extending Plaintiff's 180 days of unlawful status into May 2021. (ECF No. 13, PageID.85.) Nonetheless, Plaintiffs' noticeable delay and willingness to wait until 17 days before Plaintiff Chandrasekaran accrued 180 days of unlawful status undermines the argument that Plaintiffs' alleged injuries are indeed "irreparable."

### C. Substantial Harm and Public Interest

Plaintiff Chandrasekaran was admitted into the United States in November 2019 and has resided here legally under a tourist B-2 visa until November 2020. (ECF No. 13, PageID.84-85.) B-2 visas are not intended to provide aliens with a new long-term residence; they allow foreigners to simply visit temporarily for pleasure or medical care. *See* US. Department of State Bureau of Consular Affairs, *supra*; 8 U.S.C. § 1101(15)(B); *Matovski*, 492 F.3d at 728. Plaintiffs do not provide evidence or legal support that they are barred from applying for an L-1A work visa, which is unrelated to a B-2 visa, while Plaintiff Chandrasekaran resides in his home country. There is also no indication that Plaintiffs cannot continue this lawsuit while Plaintiff Chandrasekaran departs and remains abroad. Although Plaintiffs' B-2 visa extension request is still pending, Plaintiff Chandrasekaran has chosen to stay in the United States despite the expiration of his visa. (ECF No. 13, PageID.85-86.) It is Plaintiff Chandrasekaran's choice to accrue unlawful presence, and if the government declines to extend his B-2 visa a second time, he must leave the country or face consequences of which he is well apprised. *See* 8 U.S.C. § 1182(a)(9)(B)(i). (ECF No. 8-1, PageID.35-36; ECF No. 13, PageID.86.)

The ability to control which foreign citizens may reside within the country is a foundational aspect of national sovereignty. In this vein, courts have repeatedly recognized that enforcement of immigration laws is in the public interest. *See Albino-Martinez v. Adducci*, 454 F. Supp. 3d 642, 650 (E.D. Mich. 2020) (Murphy, J.) ("[T]he public interest in enforcement of the immigration laws is significant."); *Malam v. Adducci*, 469 F. Supp. 3d 767, 792 (E.D. Mich. 2020) (Levy, J.) ("The Court must [consider] . . .

the public interest in enforcement of the United States' immigration laws."); *Nken*, 556 U.S. at 436 (quotations removed) ("There is always a public interest in prompt execution of removal orders: undermines the streamlined removal proceedings IIRIRA established, and permits the continued presence of an alien lawfully deemed removable and prolongs a continuing violation of United States law."). The parties agree that, absent a B-2 visa extension, Plaintiff Chandrasekaran can no longer stay in the country legally. (ECF No. 8-1, PageID.35-36; ECF No. 13, PageID.86.) It is not in the public interest for the court to order Defendants to provide Plaintiff Chandrasekaran with an indefinite B-2 visa while this case progresses, thereby overriding well-accepted immigration laws. *Brunner*, 543 F.3d at 361; *Benson*, 956 F.3d at 422 (recognizing that harm to others and the public interest "merge[] . . . when the government is the defendant").

### D. Balancing the Factors

Plaintiffs have not shown that there is a strong likelihood that they will prevail in this case. *Brunner*, 543 F.3d at 361. Based on the record and briefing presented in this early stage, it is more than simply possible that Plaintiffs will not be able to overcome the deferential standards established for APA claims; moreover, 8 U.S.C. § 1252(a)(2)(B) may divest the court of jurisdiction over this case. Plaintiffs have not adequately demonstrated that they will suffer irreparable injury if Plaintiff Chandrasekaran's tourist visa expires and if Plaintiffs must apply for a L-1A visa while Plaintiff Chandrasekaran resides in India. *Brunner*, 543 F.3d at 361. Finally, it is in the public interest to enforce immigration laws, which, depending on the outcome of Plaintiff Chandrasekaran second request for a B-2 extension, may require Plaintiff

Chandrasekaran to leave the country. In all, the factors courts consider when issuing injunctions weigh against Plaintiffs' motion. *Brunner*, 543 F.3d at 361. The court will not at this time order Defendants to provide Plaintiff Chandrasekaran with B-2 visa status for the remainder of this case.

## IV. CONCLUSION

IT IS ORDERED that Plaintiffs' "Motion for Temporary Restraining Order" (ECF No. 8) is DENIED.

s/Robert H. Cleland          /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  March 25, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 25, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner          /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13247.CHANDRASEKARAN.MotionforTRO.RMK.RHC.2.docx